IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FUEL UNIVERSITY CITY, LLC<br><br>Plaintiff,<br><br>v.<br><br>ALLIED INSURANCE COMPANY OF AMERICA and NATIONWIDE d/b/a ALLIED INSURANCE COMPANY OF AMERICA<br><br>Defendants. | CIVIL ACTION NO. 20-4478 |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                               **September 9, 2021**

Plaintiff Fuel University City, LLC has brought this action against Defendants Allied Insurance Company of America and Nationwide, alleging that Defendants wrongfully denied insurance coverage for losses occurring as a result of the COVID-19 pandemic. Defendants have moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons stated below, Defendants' motion will be granted.

**I.   BACKGROUND**

Plaintiff owns and operates Fuel University City, LLC d/b/a Fuel Recharge, a delicatessen in Philadelphia.[2] Before the onset of the COVID-19 pandemic, Plaintiff purchased an "all-risk" commercial insurance policy from Allied, which covered all non-excluded business losses, including losses of business income and extra expenses for "direct physical loss of or

---

[1] Doc 17-3 at 1–2. Defendant Allied Insurance asserts that insurance policy as issue was issued by Allied Insurance Company of America and not Nationwide Insurance Company and that Nationwide is not a proper defendant here. *See* Doc. No. 17 ¶¶ 2–3.

[2] Doc. No. 15 ¶ 1.

damage to" the covered property and from a civil authority prohibiting access to the covered property.[3]

On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. Around March 13, 2020, Pennsylvania Governor Tom Wolf mandated the closure of all non-life sustaining businesses and Plaintiff "suspended or reduced" its business operations.[4] Plaintiff alleges significant financial losses because of COVID-19 and the closure order, and invoked the Business Income, Civil Authority, and Extra Expense provisions of its insurance policy.[5] Defendants denied Plaintiff's claim, asserting that COVID-19 and the Governor's closure order did not constitute a "Covered Cause of Loss" under the policy, and that coverage was barred under the policy's virus or bacteria exclusion.[6]

After the claim denial, Plaintiff brought this action seeking: (1) a declaratory judgment, under 28 U.S.C. § 2201, that Plaintiff's losses are covered under the policy and that the Virus and Bacteria exclusion does not apply; and (2) damages for breach of contract for the denial of coverage.[7] Defendants have moved to dismiss.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[3] *Id.* ¶ 2–3.

[4] *Id.* ¶ 6.

[5] *Id.* ¶ 7.

[6] *See Id.* ¶ 8; Doc. No. 15-2 at 2–3.

[7] *Id.* ¶¶ 118–36. Plaintiff asserts diversity jurisdiction under 28 U.S.C. §1332. Plaintiff is a citizen of Pennsylvania, Defendant Allied Insurance Company of America is an Idaho corporation headquartered in Ohio, Defendant Nationwide is an Ohio corporation headquartered in Ohio, and Plaintiff seeks more than $75,000 in damages.

misconduct alleged."[8] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[9] In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[10] However, the Court "need not accept as true unsupported conclusions and unwarranted inferences"[11] or "legal conclusions."[12]

### III. DISCUSSION

Under Pennsylvania law,[13] the interpretation of an insurance policy is a question of law.[14] A court must read the policy as a whole and construe its meaning according to its plain language,[15] and "give effect" to "clear and unambiguous" policy language.[16] However, a court must also consider the "reasonable expectations of the insured,"[17] and construe ambiguous policy language in favor of the insured.[18] But policy language may not be stretched beyond its

---

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[9] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citations omitted).

[10] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

[11] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[12] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)).

[13] The parties agree that Pennsylvania law governs the interpretation of the insurance policy.

[14] *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006).

[15] *Spector v. Fireman's Fund Ins. Co.*, 451 F. App'x 130, 136 (3d Cir. 2011).

[16] *401 Fourth Street v. Inv. Ins. Co.*, 879 A.2d 166, 171 (Pa. 2005).

[17] *Medical Protective Co. v. Watkins*, 198 F.3d 100, 106 (3d Cir. 1999) (citations and quotations omitted).

[18] *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016). Policy language is ambiguous where it is reasonably susceptible to more than one construction. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

plain language meaning to create an ambiguity, and a disagreement between the parties over policy language does not constitute an ambiguity.[19] The insured bears the initial burden of establishing coverage under the policy.[20]

### A. Plaintiff Cannot Show that It is Entitled to Coverage under the Policy

#### 1. *The Business Income Provision*

The Business Income provision states: "We will pay for the actual loss of 'business income' you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by direct physical loss of or damage to property at the described premises."[21] Plaintiff asserts that it is entitled to coverage because COVID-19 caused "direct physical loss of or damage to" the property by rendering it "unsafe, uninhabitable, damaged, and/or otherwise unfit for its intended use."[22] Plaintiff also asserts that social anxiety caused by COVID-19 also created "physical loss and damage" to the property "for purposes of commercial property coverage," as did the governmental closure orders.[23]

Under the policy, coverage is only available where business is suspended due to "direct physical loss of or damage to" the covered property. This phrase is in the disjunctive, meaning there must be either a "direct physical loss of" or "direct damage to" the property.[24] The Third Circuit has held that "direct damage to" a property requires "a distinct, demonstrable, physical

---

[19] *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011).

[20] *See State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009).

[21] Doc. No. 15-1 at 20.

[22] Doc. No. 15 ¶¶ 56–58.

[23] *Id.* ¶¶ 60–61, 76.

[24] *See Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, No. 20-2034, 2021 WL 1667424, at *5 (E.D. Pa. Apr. 28, 2021).

alteration of the property."[25] Even if the SARS-CoV-2[26] did "contaminat[e] the surfaces" of the covered property, as alleged, there are no allegations that such contamination caused a physical alteration of the property. Plaintiff has not alleged "direct damage to" the property.

However, the Third Circuit has explained that a "physical loss" to a building may be caused by something that does not affect the physical structure, so long as the property's "function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable."[27] For example, in *Motorist Mutual* the Third Circuit determined that bacterial contamination of a well could cause the "direct physical loss of" a property if it were to render the property unusable.[28] Plaintiff argues that under this interpretation of the policy, it has sufficiently alleged that COVID-19 caused a "direct physical loss."[29]

But the Business Income provision states that coverage is only available during "the 'period of restoration,'"[30] and the "period of restoration" is defined as the period that begins "after the time of direct physical loss or damage" and ends when the property is "repaired, rebuilt or replaced" or the business is resumed at a new permanent location.[31] By limiting coverage to the "period of restoration," it is clear that the parties intended the "direct physical loss of" a

---

[25] *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002).

[26] The severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) causes 'coronavirus disease 2019' (COVID-19).

[27] *Port Auth.*, 311 F.3d at 236.

[28] *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826–27 (3d Cir. 2005).

[29] *See* Doc. No. 18-1 at 7–10.

[30] Doc. No. 15-1 at 20.

[31] Doc. 15-1 at 53.

property to only include a loss of use "directly associated with the building such that it could be remedied through repair or by moving to a different building."[32]

Plaintiff argues that a "risk of COVID-19 entering the Property and contaminating the surfaces" made the property uninhabitable and unsafe for use.[33] But Plaintiff cannot plausibly allege that the nature of the loss caused by COVID-19 was such that it could be repaired or remedied. The Complaint, and the governmental orders attached to the Complaint, make clear that any loss of Plaintiff's property was from COVID-19 within the community and the danger caused by "unnecessary close contact" between individuals in any property.[34] Additionally, given the allegations made, disinfecting the surfaces of the property, or otherwise removing the coronavirus, would not constitute a "repair" of the "loss."[35] Plaintiff cannot show entitlement to coverage under the Business Income provision.[36]

---

[32] *RDS Vending LLC v. Union Ins. Co.*, No. 20-3928, 2021 WL 1923024, at *4 (E.D. Pa. May 13, 2021); *see also Star Buick GMC v. Sentry Ins. Grp.*, No. 20-03023, 2021 WL 2134289, at *5 (E.D. Pa. May 26, 2021); *J.B.'s Variety Inc. v. Axis Ins. Co.*, No. 20-4571, 2021 WL 1174917, *4 (E.D. Pa. Mar. 29, 2021) ("The Policy makes clear that there must be some sort of physical damage to the property that is the subject of a repair, rebuilding, or replacing."); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021).

[33] Doc. No. 15 ¶¶ 57–58.

[34] *See* Doc. No. 15-6 at 3.

[35] Because the danger was a result of COVID-19 in the community, replacement of the covered property also could not restore the loss.

[36] Plaintiff also argues entitlement to coverage under the Extra Expense provision, which states: "We will pay necessary 'extra expense' you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss." Doc. No. 15-1 at 20. Because Plaintiff has not alleged "direct physical loss of or damage to" the covered property, Plaintiff cannot show entitlement to coverage under the Extra Expense provision. *See Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F. Supp. 3d 95, 100 (E.D. Pa. 2020) ("In order to recover extra expenses, however, plaintiff would still need to plead sufficient facts of direct physical loss or damage caused by a Covered Cause of Loss."); *Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co.*, No. 20-5271, 2021 WL 1210000, at *5 (E.D. Pa. Mar. 31, 2021) (finding the extra expenses provision is predicated on physical loss of or damage to property).

*2. The Civil Authority Provision*

Plaintiff asserts that it is entitled coverage under the Civil Authority provision, which has three requirements for coverage: (1) access to the covered property is prohibited by a civil authority, (2) there is damage to a nearby property, and (3) the civil authority action is either "in response to dangerous physical conditions resulting from the damage" or to allow access to the damaged property.[37] Plaintiff argues that the provision applies because it suffered a loss of business income because of the COVID-19 governmental closure orders.[38]

Unlike the provisions discussed above, the Civil Authority provision does not use the phrase "direct physical loss of or damage to" and instead requires "damage to property." However, the Court need not determine the meaning of "damage" under this provision because Plaintiff has not sufficiently alleged that the governmental closure orders were "in response to" damage to a nearby property.

Plaintiff argues that COVID-19 "rendered property within 1 mile of the Covered Property unsafe, uninhabitable, damaged, and/or otherwise unfit for its intended use."[39] But as discussed

---

[37] Doc. No. 15-1 at 21. The Civil Authority provision, in its entirety, states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.*

[38] *See* Doc. No. 15 ¶ 72.

[39] Doc. No. 15 ¶ 74.

above, the governmental closure orders were enacted because of the existence of COVID-19 within the community—not related to any particular property.[40] Plaintiff cannot plausibly allege coverage under the Civil Authority provision.

### B. Plaintiff's Insurance Claims are Barred by the Virus Exclusion

Even if Plaintiff could establish a right to coverage under the policy, coverage would be barred under the Virus or Bacteria exclusion. Under Pennsylvania law, the insurer bears the burden of showing exclusion applies.[41] Exclusions are strictly construed against the insurer,[42] but "[e]xclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import."[43]

The "Virus or Bacteria" exclusion states that the policy will "not pay for loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."[44] SARS-CoV-2 is a virus which induces physical distress, illness or disease and is the direct or indirect cause of Plaintiff's

---

[40] Other courts considering similar civil authority coverage have reached this same conclusion. *See e.g.*, *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, No. 20-3863, 2021 WL 131555, at *7 (E.D. Pa. Jan. 14, 2021) ("[W]e disagree that the orders were issued in response to a 'dangerous physical condition" of the property. The civil authorities issued their orders to address the health crisis, not some 'direct physical loss' as required by [plaintiff's] policy").

[41] *See State Farm Fire & Cas. Co.*, 589 F.3d at 111; *Wolfe v. Ross*, 115 A.3d 880, 884 (Pa. Super. Ct. 2015).

[42] *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998).

[43] *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 761 (3d Cir. 1985).

[44] Doc. No. 15-1 at 33–36.

alleged loss. The Virus or Bacteria exclusion unambiguously bars coverage for Plaintiff's claims.[45]

Plaintiff argues that the principle of regulatory estoppel bars enforcement of the exclusion. Plaintiff asserts that insurance industry trade groups misrepresented to state regulators "that the Virus Exclusion would not change the scope of coverage" and added the exclusion without "a reduction in premiums to balance a reduction in coverage."[46] Therefore, Plaintiff claims Defendants should be estopped from relying on the exclusion in a way that would effectively reduce the scope of coverage.

Regulatory estoppel requires a showing that "(1) a party made a statement to a regulatory agency; and (2) afterward, the party took a position opposite to the one presented to the regulatory agency."[47] Even if the Court were to impute the statements of insurance trade groups to Defendants, the statements made are not contrary to any position that Defendants have taken here. Indeed, like the insurance trade groups, Defendants assert that Plaintiff is not entitled to coverage under the provisions of the policy and that the Virus or Bacteria exclusion serves to make clear that coverage is unavailable. Regulatory estoppel does not apply.[48]

Plaintiff also argues that even if the Virus or Bacteria exclusion did apply, it would not bar the claims Plaintiff has made for expenses because the exclusion only refers to "loss or

---

[45] Other courts considering a similar exclusion in COVID-19 insurance cases have reached this same conclusion. *See, e.g., Lansdale 329 Prop.*, 2021 WL 1667424, at *10 (collecting cases) ("These cases have almost unanimously concluded that the language of the Virus Exclusion unambiguously bars coverage").

[46] Doc. No. 15 ¶¶ 98, 100.

[47] *Simon Wrecking Co. v. AIU Ins. Co.*, 541 F. Supp. 2d 714, 717 (E.D. Pa. 2008).

[48] Multiple courts have rejected this same regulatory estoppel argument. *See Moody v. Hartford Fin. Grp., Inc.*, 513 F. Supp. 3d 496, 513 (E.D. Pa. 2021) (collecting cases).

damage."⁴⁹ But "[i]n the insurance context, a 'loss' is the 'amount of financial detriment caused by . . . an insured property's damage.'"⁵⁰ The extra expenses incurred by Plaintiff are still financial losses caused by the coronavirus and therefore fall within the exclusion.

### IV.  CONCLUSION

The Court is sympathetic to Plaintiff and other similarly situated businesses that were affected by the recent public health crisis. But the Court must reach the result that is consistent with the language of the policy and the applicable jurisprudence. Plaintiff's Amended Complaint will be dismissed with prejudice.⁵¹ An order will be entered.

---

⁴⁹ Doc. No. 15 ¶ 88.

⁵⁰ *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 503 F. Supp. 3d 251, 256 (E.D. Pa. 2020) (quoting Black's Law Dictionary 1087 (10th ed. 2009)); *see also* LOSS, Black's Law Dictionary (11th ed. 2019). The Court also notes that the exclusion refers to "loss or damage" and does not use the phrase "direct physical loss of or damage to."

⁵¹ Where amendment would be futile, leave to amend need not be provided. *See Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007).